UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| A.T. By His Parent and Next of Friend of K.T., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL NO. 2:11cv37 ) |
| GARY COMMUNITY SCHOOL CORPORATION, | ) ) ) ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the plaintiff, A.T. By His Parent and Next of Friend of K.T., on June 27, 2011. The defendant, Gary Community School Corporation ("the school"), filed its response on July 28, 2011, to which the plaintiffs replied on August 10, 2011.

For the following reasons the motion for summary judgment will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in

that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

## Discussion

A.T. is a student eligible for special education as a student with autism spectrum disorder and a language impairment. K.T. is A.T.'s adopted parent. At the end of the 2008-2009 school year, the school made a decision to consolidate educational programming due to budget cuts and the school closed many buildings. A.T. had been attending Lew Wallace High School and was placed in a self-contained class for students with severe cognitive impairments. The school decided to remove the students that were in self-contained severe programs to Lincoln Achievement Center to make room for non-disabled students whose schools were being closed. Lincoln Achievement Center operates as a day treatment facility for students in the school corporation that are emotionally disturbed. In the new placement, A.T. did not have access to the same benefits and privileges to which he had access at Lew Wallace High School due to the severity of the emotional handicaps of the students attending Lincoln Achievement Center. No individualized education program ("IEP") meeting was convened to discuss moving A.T. to this new placement.

In addition to being placed in this highly restrictive environment, A.T. was not being provided educational services that would allow him to educationally progress. Specifically, A.T. was not receiving appropriate speech services, assistive technology services, behavior services or specialized instructional services. The school was not monitoring A.T.'s progress nor was the

2

school sending home progress reports to the parent. Consequently, the parent filed a request for due process on September 22, 2010. An independent hearing officer was assigned by the Indiana Department of Education to hear the case.

The parent met with the school for a resolution session pursuant to the requirements of the Individuals with Disabilities Education Act (hereinafter IDEA) and Article 7. At the resolution session, the school made no offer of settlement. No subsequent offer of settlement was ever made in the case, including a Rule 68 offer of judgment. The school offered no witness list and proffered no exhibits at the hearing. It did not call any witnesses at the hearing. The hearing officer rendered a decision on December 26, 2010 which was received by Plaintiffs on December 29, 2010. That decision found that A.T. had been denied a free appropriate public education and that as compensatory education he should receive a private education at public cost. The school did not appeal the hearing officer's decision thereby making it a final decision. Once a decision becomes final the hearing officer's orders are to be implemented within thirty days.

The school offered no communication to Plaintiffs after receiving the hearing officer's decision. On January 14, 2011, Plaintiffs, via counsel, sent a letter to the school's counsel indicating that they believed they were prevailing party, that they had chosen Elim Christian School ("Elim") as a placement for A.T. and had begun the admissions process. They also noted that they were entitled to reimbursement of attorney fees and that until A.T. was placed appropriately, they believed that the school would continue to be responsible for all attorney's fees. The only response received by the school was a call to Plaintiffs' counsel's secretary indicating that the school would need an itemized billing statement and W-9 before they could reimburse attorney's fees. Plaintiffs' counsel sent an email on January 27, 2011 indicating that

3

the school would receive an invoice when the case was resolved and that a suit for fees had been filed in federal court. Plaintiffs' counsel requested that the school contact at her as soon as possible to avoid further litigation. The school made no further contact for two months.

The Plaintiffs continued, with the help of counsel, to facilitate A.T.'s placement at Elim including driving A.T. to Elim so that Elim could conduct the educational observation needed for admission. On February 28, 2011, Plaintiffs' counsel sent an email to the school introducing the admissions director of Elim and indicating a desired transition meeting date of March 15, 2011. No response was received from the school. On March 1, 2011, the Elim admissions director sent an email introducing herself to the school and a response was received from the school on March 3, 2011.

The school received a summons in this cause on February 8, 2011, but did not make any filings until March 4. The Plaintiffs had agreed to an extension of time because Ms. Coleman, counsel for the school, indicated that it was her hope for quick resolution of the matter. Unfortunately, that did not happen.

A transition meeting was held on March 15, 2011. The meeting was incomplete and the school did not comply with the hearing officer's orders because they did not agree to a private assistive technology evaluation, they did not discuss a transition plan, they did not discuss summer placement, they did not discuss transportation and they did not agree to pay for the required evaluation. Additionally, there were numerous mistakes in A.T.'s IEP which were present until after April 2011, four months after the hearing officer's decision was to have been fully implemented. The Indiana Department of Education ("IDOE"), one of the entities responsible for ensuring compliance with the hearing officer's decision, gave the school until

4

April 30, 2011 to implement all the orders. On April 7, Plaintiffs' counsel contacted Ms. Coleman regarding the outstanding unresolved matters in the case. Ms. Coleman's response indicated that she wanted to have everything finalized by April 30 in order to comply with the IDOE's order. Consequently, Plaintiffs agreed to another extension of time in order for the school to finalize compliance by April 30. However, on April 29, the school asked for another extension of time to which the Plaintiffs would not agree.

By this point, the Plaintiffs were quite frustrated with the school's continued lack of compliance and threatened to request a default judgment if the school did not comply with the orders. Rather than comply, the school filed an answer to the complaint on May 11, 2011. In its answer, the school denied that Plaintiffs filed an administrative due process action, denied that a due process hearing was held, denied that Plaintiffs prevailed, denied that this court has jurisdiction, denied that venue is proper in the Northern District, denied that A.T. has autism, denied that A.T. attended Gary Schools, and denied that A.T. is entitled to special education protection. Further, the school made several unsupported affirmative defenses.

On June 13, 2011 Ms. Coleman asked Plaintiffs' counsel for a final bill. An invoice was forwarded by Plaintiffs' counsel on that same date as Ms. Coleman indicated that the school board was meeting that evening and the bill would be discussed at the board meeting. Later that week, Plaintiffs' counsel contacted Ms. Coleman to find out the resolution of the board meeting on the requested reimbursement. Ms. Coleman indicated that it was Ms. Hatcher, the school's in house counsel, and not the board, that had to approve the bill and asked for an extension of time until June 24 to give Ms. Hatcher time to approve the bill. The Plaintiffs reluctantly gave that extension but indicated that they were ready to file a motion for summary judgment as to fees

and would do so unless they heard back from the school. On June 24, Plaintiffs' counsel called Ms. Coleman to discuss resolution. Ms. Coleman indicated that she was faxing the school's concerns about the bill and refused to discuss the concerns over the phone. Plaintiffs' counsel indicated that a summary judgment motion was substantially completed but that the Plaintiffs were willing to forego the costs of the motion if the case were to resolve on June 24. Ms. Coleman refused to discuss the matter further. An email was sent by Plaintiffs' counsel addressing the school's concerns and again indicating that the school had until the end of the day to settle; otherwise summary judgment would be filed. As no settlement was reached, the summary judgment motion is now before the court.

"To ease the financial burden on parents making claims, the IDEA contains a fee-shifting provision that allows attorney's fees to the parents of a child with a disability who are the 'prevailing party' in any action or proceeding brought under the IDEA. 20 U.S.C. § 1415(i)(3)(B)." T.D. v. La Grange Sch. Dist. No. 102, 349 F.3d 469, 471 (7th Cir. Ill. 2003). "As examples of the type of relief necessary to attain 'prevailing party' status, the court cited a judgment on the merits and a consent decree." Id. citing Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (U.S. 2001). Moreover, if the Court finds that the school "unreasonably protracted the final resolution of the action or proceeding or violated [the IDEA]," the Court may not reduce an award of attorneys' fees to Plaintiff. 34 CFR § 300.517 (c)(5) and 20 U.S.C. § 1415 (i)(3)(B)-(G). In Walker v. Housing Auth. of City of Dallas, 313 F.3d 246, 249 (5th Cir. 2002) the court held:

> To qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.

There is no dispute in this case that the Plaintiffs are the prevailing party and that the school must pay attorneys' fees. The only issue before the court is the amount of attorneys' fees that the school must reimburse.

In determining an award of reasonable attorney's fees "[t]he 'lodestar' method- reasonable hourly rates multiplied by hours reasonably expended- is the most appropriate starting point." People Who Care v. Rockford Bd. Of Educ., 90 F. 3d 1307, 1310-11 (7th Cir. 1996) citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar figure has "become the guiding light of our fee shifting jurisprudence and there is a strong presumption that lodestar represents the reasonable fee." City of Burlington v. Dague, 505 U.S. 557, 562 (1992); McNabola v. Chicago Transit Authority, 10 F.3d 501, 518 (7th Cir. 1993). Once the lodestar figure is calculated, a court may adjust the figure upwards or downwards depending on a number of factors commonly referred to as the Hensley factors. Hensley, 461 U.S. at 434; People Who Care, 90 F.3d at 1310; Jaffe v. Redmond, 142 F.3d 409, 413 (7th Cir. 1998).

These factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of the awards in similar cases. Id. However, adjustments to the lodestar based on such factors should be rare and reserved only for exceptional cases, and then only if circumstances which are not already factored into the lodestar calculation

demonstrate that the resulting fee would be unreasonable. Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 564-65 (1986) (noting that many such facts are subsumed with the initial lodestar calculation); see also Welch v. Metro Life Ins. Co., 480 F. 3d 942, 946 (9th Cir. 2007); McNabola, 10 F.3d at 518; Leffler v. Meer, 936 F. 2d 984, 985 (7th Cir. 1991).

In determining reasonable hourly rates, attorneys' fee awards are to be based on market rates for services rendered. Missouri v. Jenkins, 491 U.S. 274, 283 (1989). The attorney's actual billing rate for comparable work is "presumptively appropriate to use as the market rate." Spegon v. Catholic Bishop of Chicago, 175 F. 3d 544, 555 (7th Cir. 1999). If the court is unable to determine the attorney's true billing rate, the court may then look to the next best evidence- the rate charged by the lawyers in the community of "reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895, n. 11 (1984). In determining the reasonable hourly rate, the court should consider the experience, skill, and reputation of the attorney requesting the fees and the complexity of the case. Welsh, 480 F. 3d at 946. Cases litigated under the IDEA are complex. As the Third Circuit has stated in special education cases such as this, "we acknowledge. . . most attorneys will be reluctant to take on cases like this, characterized as they are by voluminous administrative records, long administrative hearings and specialized legal issues." Collingsgru v. Palmyra Bd. Of Educ., 161 F. 3d 225, 236 (3d Cir. 1998, overruled on other grounds, Winkleman v. Parma City Schl Dist., 550 U.S. 516 (2007).

The Plaintiffs have filed exhibits that contain detailed billing of the work involved in this case. The hearing in this case lasted two days, however, as detailed above, additional substantial work had to be done after the due process hearing due to the school's unwillingness to comply with the hearing officer's order. Id. Further, a statutory award to a prevailing party presumptively

encompasses all aspects of a civil actions, including fees on fees litigation. Commissioner, INS v. Jean, 496 U.S. 154, 161-62. (1990). To hold otherwise would dilute the value of a fees award by forcing attorneys into extensive uncompensated litigation in order to gain any fees. Id.

The Plaintiffs claim that the school acted in bad faith and request an unspecified sanctions award pursuant to 28 U.S.C. § 1927 and the court's inherent power. The Plaintiffs claim that the school misstated the record, lodged frivolous objections to Plaintiff's claims, and made mischaracterizations of the law. The Plaintiffs contend that the school has insisted on maintaining this litigation despite the obvious lack of merit. The Plaintiffs assert that the "whiplashing contradictions" in the school's various positions during the course of the litigation has resulted in excessive hours of work by counsel in responding to frivolous and unfounded arguments and pleadings.

The school, in its response to the summary judgment motion, takes a position diametrically opposite to that of the Plaintiffs. The school contends that the attorney fees should be reduced due to the Plaintiffs prolonging the case and spending time that was excessive. The school claims that on January 14, 2011, Plaintiffs' attorney unreasonably protracted the final resolution of the controversy by not providing an itemized bill. The school asserts that the IDOE was overseeing the implementation of the hearing officer's decision and thus there was no need for Plaintiffs' counsel to stay involved in the case. The school further asserts that when Plaintiffs' counsel refused to provide a bill this prohibited the school from reaching a resolution on the outstanding issue of attorney fees. The school has requested that the court reduce the attorney's fees award ($43,974.00) by over 50% to the amount of $19, 915.75.

The Plaintiffs, in reply, point out that the IDEA allows for reimbursement of fees incurred

9

to implement the hearing decision. 34 C.F.R. §300.517(a). Although the school contends that the IDOE was overseeing the hearing officer's orders and making sure they were implemented, the record clearly shows that the IDOE did not notify any parties of its involvement until April 7, 2011. By the time the IDOE got involved, an IEP meeting had been accomplished, Elim had accepted A.T., transportation had been arranged for A.T., and A.T. had started at Elim. The items that still needed to be accomplished after that included securing the assistive technology evaluation, adjusting the IEP to include extended school year, and assigning a liaison between Elim and the school corporation. It was not until June 13, 2011 that Plaintiffs received notice that the school would agree to pay for the assistive technology evaluation ordered by the hearing officer. It was not until a meeting in May, 2011 that the school agreed to provide an extended school year and, at the time of the briefing on this motion, the Plaintiffs had not been notified of a liaison between the school and Elim. As the Plaintiffs' point out, had counsel not remained in this case, it is doubtful that A.T. would have started school as early as he was able to with counsel's intervention. Rather, the entire case would have likely languished and A.T. would have not received an appropriate education.

Even though the IDOE indicated they were monitoring compliance of the case, they never contacted Plaintiffs, Plaintiffs' counsel, or Elim to determine whether the hearing officer's orders were being implemented. It is apparent in this case that it was the work of Plaintiffs' counsel that ensured that the hearing officer's orders were implemented. Consequently, Plaintiffs' attorney's fees will be awarded as requested.

However, the court will not impose additional sanctions on the school pursuant to §1927. While it is clear that the school did not give A.T.'s case the attention and priority it should have

received, it is also clear that this case was delayed in part due to a certain animosity that developed between Plaintiffs' counsel and the school's counsel. Thus, the court is reluctant to further burden a cash-strapped school corporation with sanctions. The court trusts that the grant of the full attorney fee request will impress upon the school the necessity of assuring that <u>all</u> students are receiving an appropriate education and avoiding drawn-out, costly litigation when IEPs become an issue.

Accordingly, for all the foregoing reasons, the Plaintiffs' motion for summary judgment will be granted.

## Conclusion

On the basis of the foregoing, the Plaintiffs' motion for summary judgment is hereby GRANTED. The Plaintiffs are hereby AWARDED the sum of $43,974.00.

Entered: November 7, 2011.

<u>s/ William C. Lee</u><br>
William C. Lee, Judge<br>
United States District Court